

# In the
# Missouri Court of Appeals
# Western District

DAVID J. HARRIS, )
)
Appellant, )
)
v. ) WD87717
) OPINION FILED:
) OCTOBER 14, 2025
MISSOURI SECRETARY OF STATE, )
)
Respondent. )

### Appeal from the Circuit Court of Cole County, Missouri
### The Honorable Jon E. Beetem, Judge

### Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,
### Thomas N. Chapman, Judge, Renee Hardin-Tammons, Special Judge

David J. Harris appeals the circuit court's judgment which found that Harris lacks standing to challenge the Missouri Secretary of State's ("SOS") closure of an investigation into a complaint Harris filed with the SOS. Harris raises five points on appeal. Each point contends, for various reasons, that the circuit court erred in dismissing Harris's petition for lack of standing. We affirm.

## Background and Procedural Information

In March 2022, Harris and another individual filed suit in the circuit court against University City, alleging that city officials were using public funds to generate support

for a local ballot measure in violation of Section 115.646.[1]  *Sullivan v. City of University City*, 677 S.W.3d 844, 846 (Mo. App. 2023).  The petitioners requested, among other things, that the circuit court enjoin the respondents from using public funds to promote the ballot measure.  *Id.* at 847.  After this request was denied, the petitioners filed an amended petition seeking a declaratory judgment that the direct expenditure of public funds by the city's public officials to promote the ballot measure violated Section 115.646.  The circuit court dismissed the suit finding, in part, that the petitioners have no private right of action under Section 115.646.  *Id.*

The petitioners appealed, arguing among other things that Section 115.646 provides taxpayers as a protected class with a private right of action to enforce its provisions.  *Id.* at 848.  On August 22, 2023, the Eastern District Court of Appeals affirmed the circuit court's dismissal of the matter, holding that the petitioners had not demonstrated that taxpayers' interests are not adequately protected by the remedies provided by the legislature, namely enforcement by the Missouri Ethics Commission, a local prosecutor, or the SOS.  *Id.* at 853.

Harris subsequently filed a complaint with the SOS (and the Missouri Ethics Commission) on December 20, 2023, alleging a violation of Section 115.646.  Specifically, Harris challenged the way public funds were used by University City "in relation to Proposition F, a ballot measure that was on [University City's] April 5, 2022

---

[1]All statutory references are to the Revised Statutes of Missouri, as currently updated, unless otherwise noted.

election ballot." Section 115.646 provides, in part, that "No contribution or expenditure of public funds shall be made directly by any officer, employee or agent of any political subdivision…to advocate, support, or oppose the passage or defeat of any ballot measure."

On January 11, 2024, the SOS Director of Elections sent Harris a letter acknowledging receipt of the complaint and informing Harris, "After reviewing your complaint, our office has decided to look further into this matter pursuant to section 115.642, RSMo."

On February 29, 2024, the SOS mailed Harris a letter signed by SOS general counsel which stated that, "After reviewing the numerous documents you provided, it has been determined that nothing in those documents shows the City expressly advocated or supported the ballot measure rather than merely explain what the ballot measure would do. Therefore, our office is closing this investigation and no further action is being taken."

On March 15, 2024, Harris filed a Petition for Review in the circuit court pursuant to Section 536.150, alleging that the "expressly advocated or supported" language used by the SOS was an improper legal standard for evaluating alleged violations under Section 115.646. Harris alleged that the correct legal standard for a violation of the statute is the plain language of the statute and the common understanding of that plain language.

Harris's petition acknowledged that there "are no provisions for administrative review of a no further action decision by the SOS under Section 115.642," and alleged that there is no provision for judicial inquiry into the SOS's action other than a review pursuant to Section 536.150. Harris requested remand of the complaint to the SOS with instructions "to apply the correct legal standard of the plain language of the Statute and the common understanding of that plain language when evaluating the Complaint and the Proposition F materials for a violation of the Statute."

In response, the SOS's answer alleged that Harris's petition failed to state a claim for mandamus, injunction, or prohibition under Section 536.150. Further, while Harris took issue with the SOS's determination that there was no evidence showing that University City "expressly advocated or supported the ballot measure rather than merely explain what the ballot measure would do" and argued that the "expressly advocated or supported" standard by which the SOS reviewed Harris's complaint was incorrect, the Missouri Supreme Court used the term "express advocacy" when ruling on a claim brought under Section 115.646. In that case, the Court found that Section "115.646 is intended to prohibit the use of public funds for 'express advocacy,' which is a narrow category of conduct under the First Amendment[.]" *Sullivan*, 677 S.W.3d at 849 (citing *City of Maryland Heights v. State*, 638 S.W.3d 895, 900 n.6 (Mo. banc 2022)).

At a case management conference on August 16, 2024, the court inquired into whether Harris had standing to bring his action under Section 536.150. After briefing and argument by the parties, the court entered judgment on November 19, 2024, dismissing

4

Harris's petition for lack of standing. The court concluded that Harris failed to demonstrate that his "legal rights, duties or privileges" were affected by the SOS's decision not to proceed, or that he suffered any "unique pecuniary impact" such as would create tax payer standing. Further, that Harris "lacks injury in fact."

This appeal follows.

## Standard of Review

Standing is a question of law reviewed *de novo* on appeal. *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013). "Standing is a necessary component of a justiciable case that must be shown to be present prior to adjudication on the merits." *Id.* at 774 (internal citation and quotation marks omitted). "Standing cannot be waived, may be raised at any time by the parties, and may [] be addressed *sua sponte* by the trial court or an appellate court." *Cook v. Cook*, 143 S.W.3d 709, 711 (Mo. App. 2004).

## Points on Appeal

Harris raises five points on appeal. Each point contends, for various reasons, that the circuit court erred in dismissing Harris's petition for lack of standing. In Point I, Harris contends that he satisfies the requirements for standing under Section 536.150 because he has a legal right to have the SOS use the correct legal standard for his complaint to the SOS. In Point II, Harris contends that his legal right to have the SOS use the correct legal standard when considering his complaint is a "private right." In Point III, Harris argues that he has a "personal interest" in the SOS's use of the correct legal standard when applying the law to the facts of his complaint. In Point IV, Harris

5

contends that he was "injured" by the SOS's alleged failure to use the correct legal standard when addressing the complaint. In Point V, Harris contends that the courts, not the SOS, have a constitutional duty to determine the correct legal standard. We address these points together.

Pursuant to Section 115.642.1, any person may file a complaint with the SOS via a sworn affidavit stating the name of any person who has violated any provisions of Section 115.629 to 115.646 and the facts of the alleged offense. The SOS may investigate any suspected violation. § 115.642.4(1). Within thirty days of receiving a complaint, the SOS shall notify the complainant whether the SOS dismissed the complaint or will commence an investigation. § 115.642.2. The SOS "shall dismiss" frivolous complaints. *Id.* A "frivolous complaint" is "an allegation clearly lacking any basis in fact or law." *Id.* If reasonable grounds appear that the alleged offense was committed, the SOS may issue a probable cause statement. *Id.* If a probable cause statement is issued, the SOS may refer the offense to the appropriate prosecuting attorney. *Id.*

"In Missouri, the right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Fannie Mae v. Truong*, 361 S.W.3d 400, 403 (Mo. banc 2012) (internal quotation marks and citation omitted). While the legislature allows any person to file a complaint with the SOS alleging a Section 115.646 violation, the only "right" the legislature gives the complainant thereafter is to receive notice as to whether the complaint was dismissed or will be investigated. Although the legislature

6

could have granted appeal rights to complainants had it desired, the statutory scheme gives no appeal rights to complainants.[2] From this we infer that the legislature did not intend to confer standing on a complainant to appeal the SOS's closure of an investigation into a complaint. *See Groh v. Ballard*, 965 S.W.2d 872, 874 (Mo. App. 1988) (holding that "[a] standard rule of statutory construction is that the express mention of one thing implies the exclusion of another."). Harris likely understands this.

In *Sullivan*, Harris understood that the legislature has provided the SOS as a method of enforcing a citizen complaint regarding a possible violation of Section 115.646. 677 S.W.3d at 853. He argued, nevertheless, that the "'extreme latitude given the secretary of state and the many other responsibilities of the secretary of state's office' means there is 'little assurance that even a meritorious complaint will result in any enforcement action.'" *Id.* The Eastern District's response: "But this is a determination which rightly rests with the legislature, not with Appellants, and not with this Court." *Id.* Harris now attempts to challenge the SOS's investigation into his complaint, and there is simply no legislative support for such challenge.

Nevertheless, even if Section 536.150 is an appeal avenue to challenge an SOS complaint dismissal and/or investigation result, for standing to raise a Section 536.150 claim, the appellant still has to prove the SOS's action directly affected the appellant's

---

[2]With regard to Section 115.642, if the SOS chooses to pursue prosecution of the subject of the complaint, the subject of the complaint would necessarily be afforded due process and appeal rights as to any adverse decision.

7

private rights. *State ex rel Christian Health Care of Springfield, Inc., v. Missouri Dept. of Health and Senior Services*, 229 S.W.3d 270, 276 (Mo. App. 2007).[3]

> Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency. Whether a person has standing to seek judicial review of an administrative decision is a question of law that depends upon a number of factors, including the nature and extent of the person's interest in the subject matter, the character of the administrative action, and the terms of the statute that created the right or the method of review.

*Id.* (quoting *Columbia Sussex Corp. v. Missouri Gambling Commission*, 197 S.W.3d 137, 140-41 (Mo. App. 2006)). "If a party's interests are unaffected by resolution of an issue he has no standing to raise it." *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 (Mo. banc 1982).

In Point I, Harris claims that he has a "legal right" to have the SOS use the correct legal standard when applying the law to the facts of his complaint. Yet, our legislature entrusts various entities with protecting public rights, keeping the peace, and administering justice, and simply having the right to make a complaint does not necessarily come with additional rights. While Harris argues that the SOS will go unchecked if he has no ability to challenge the SOS's interpretation of the law, he cannot show that the legislature granted him that authority.

---

[3]Section 536.150 provides, in part, that when any administrative officer or body has rendered a decision not subject to administrative review, "determining the legal rights, duties or privileges of any person," and there is no other provision for judicial inquiry into or review of such decision, suit may be brought in court to challenge the decision. Section 536.150, by its express terms, does not apply to contested cases. §536.150.2.

8

In Point II, Harris argues that his "private right" to challenge an SOS complaint determination is akin to the "private right" to "welfare benefits" as discussed in *Hill v. State Dept. of Public Health and Welfare*, 503 S.W.2d 6, 7 (Mo. banc 1973), which involved an individual's permanent and total disability benefits being suspended. Harris fails to explain how the SOS's determination regarding Harris's complaint is analogous to lost disability benefits, and we find no similarities.

He also cites *Genesis School, Inc. v. Missouri. St. Bd. Of Educ.*, 688 S.W.3d 242, 251-252 (Mo. App. 2024), in arguing that he has a "private right" to challenge the SOS's handling of his complaint. In *Genesis*, this court found that a charter school had standing under Section 536.150 to challenge revocation of its charter because it had a "private right" in and to its charter by virtue of a contractional relationship with the Missouri Charter Public School Commission. *Id.* The school had a "personal claim" because its private right was directly impacted by revocation, and thus "standing to protect that private right pursuant to judicial review" via Section 536.150. Again, Harris fails to explain the connection with his own case, or how his situation is not more akin to *State ex rel. St. Francois Cnty. Sch. Dist. R-III v. Lalumondier*, 518 S.W.2d 638 (Mo. 1975), which is distinguished in *Genesis*.

"In *Lalumondier*, a school district attempted to challenge a board of equalization determination that failed to increase the assessed valuation of real property not owned by the school district but within the school district's boundaries." *Genesis*, 688 S.W.3d at 251. The Missouri Supreme Court determined that the school district had no right to

judicial review because "the indirect impact of an administrative agency's decision on a 'public interest' is not a 'private right' involving a 'personal claim' sufficient to support standing to pursue section 536.150 judicial review." *Id.* at 252.

Here, Section 115.642.1 allows any person to file a complaint with the SOS and contains no threshold requirement that a complainant's legal rights, duties, or privileges be impacted in order to make a complaint. Section 536.150 judicial review, however, requires private rights to be impacted and, like the school district in *Lalumondier*, Harris has proven only a potential public interest in the subject matter of his complaint.

In Point III, Harris contends that he "has a personal interest in the SOS's use of the correct legal standard when applying the law to the facts" of his complaint, because of "the several years of litigation in which Harris was involved with this issue prior to the Complaint." Yet, litigation alone is not proof of a personal interest in the subject matter, and the Eastern District in *Sullivan v. City of University City* expressly advised Harris that he had no private right of action to enforce Section 115.646, despite his claim that as a taxpayer he was within a protected class with a private right of action. 677 S.W.3d at 853. Harris now claims that he has a private right to ensure the SOS properly enforces Section 115.646. Again, Harris proves only a potential public interest in the SOS's enforcement of Section 115.646.

In Point IV, Harris argues that he was "injured" by the SOS's alleged use of an incorrect legal standard when applying the law to the facts of Harris's complaint. In support, he discusses *Courtright v. O'Reilly Auto*, 604 S.W.3d 694, 704 (Mo. App. 2020),

10

which held, in part, that a prospective employee had standing to raise a claim under the Fair Credit Reporting Act.  The prospective employee had an employment offer revoked after the employer erroneously determined the man had been found guilty of stealing.  *Id.* The employer failed to follow proper procedure which could have uncovered the mistake and prevented the offer revocation.  *Id.*  We found that the prospective employee suffered an actual injury sufficient to establish standing.  *Id.*  Here, Harris fails to explain how any injury he purports to have due to the SOS's actions is similar to the concrete injury associated with the erroneous job loss discussed in *Courtright*.

In his final point on appeal, Harris argues that the courts, and not the SOS, have a constitutional duty to determine the correct legal standard the SOS is to use, and "Harris is the only person who can provide reviewing courts the opportunity to exercise the constitutional duty to 'say what the law is'" and, consequently, Harris "must have standing to provide reviewing courts the opportunity."  Yet, Harris can only have standing under Section 536.150 if he shows that the SOS's actions regarding his complaint determined his legal rights, duties, or privileges.  He has not.

Harris's points on appeal are denied.

## Conclusion

The circuit court did not err in dismissing Harris's Petition for Review for lack of standing.  Harris fails to prove that he has any right to appeal the SOS's determinations

11

regarding his complaint.  The circuit court's judgment is affirmed.

                                           _____

                                           Anthony Rex Gabbert
                                           Chief Judge

All concur.